IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN HARPER | : | CIVIL ACTION |
| | : | NO. 10-7555 |
| v. | : | |
| | : | |
| JEFFERY ALBO , et al. | : | |

O'NEILL, J.                                                                                   AUGUST 24, 2011

## MEMORANDUM

Pro se plaintiff John Harper is a state prisoner currently incarcerated at the State Correctional Institution at Frackville. On January 4, 2011, plaintiff filed this lawsuit against Community Corrections Center at Allentown employees Jeffery Albo[1] and Jamie Luquis.[2] In his complaint, plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Presently before me are defendants' motion to dismiss and plaintiff's response.[3]

---

[1]   In plaintiff's complaint, defendant Albo's name is spelled "Albio" and defendant Luquis's name is spelled "Luquise." Am. Comp. at 1. I will order the Clerk to amend the docket to reflect the proper spelling of each defendant's name.

[2]   Plaintiff filed an amended complaint on January 14, 2011.

[3]   Plaintiff filed a response to defendants' motion that in part consisted of an affidavit containing a more detailed account of the allegations in the complaint. In deciding a motion to dismiss, it is within my discretion whether to consider evidence outside the complaint. Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992). Since the plaintiff's complaint standing alone states a claim for relief and, as I discuss more fully in footnote seven, the allegations in plaintiff's affidavit do not support his claim against defendant Luquis, I will not consider the plaintiff's affidavit.

BACKGROUND

Plaintiff was incarcerated at CCC Allentown in February 2010. Am. Compl. at 4.[4] Approximately two weeks before the events that gave rise to this suit, defendant Albo, a counselor at CCC Allentown, called plaintiff into his office. Id. Albo informed plaintiff that he would likely be a target of the "Bloods" street gang. Id. He also asked whether plaintiff knew of any inmates currently being recruited by the gang. Id. Plaintiff responded in the negative. Id.

Approximately two weeks after the conversation with Albo, plaintiff was assaulted by Alvin Davis, another inmate incarcerated at CCC Allentown. Id. According to plaintiff, Davis was either a current member of the Bloods gang or was being initiated into the gang at the time of the assault. Id. As a result of the attack, plaintiff alleges that he broke his hand and suffers from impaired vision in his left eye. Id.

On February 19, 2010, plaintiff was transferred to SCI-Frackville by "agent Anthony Mondello." Id. at 3. There, in an attempt to report what he viewed as misconduct by Albo, plaintiff asked the correctional officer on duty for a grievance form. Id. The officer informed plaintiff that the prison had run out of grievance forms. Id. Plaintiff repeated his request for a grievance form every day for the next thirty days. Id. Each time, prison officials denied his request. Id. Plaintiff alleges that he stopped requesting a grievance form after correctional officers informed him that it was too late to file a grievance. Id.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

[4] The factual allegations in plaintiff's amended complaint are primarily contained in one paragraph entitled "Statement of claim."

Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where

the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

Additionally, pleadings that are pro se must be held to "less stringent standards than formal pleadings drafted by lawyers." Dickerson v. Brooks, No. 06-289, 2007 WL 4689001, at *2 (W.D. Pa. Oct. 31, 2007), citing Haines v. Kerner, 404 U.S. 519, 520-521 (1972); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969), noting that a petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance." Pro se complaints, especially from civil rights plaintiffs, should be read liberally, as prisoners in particular are often at an informational disadvantage that may prevent them from pleading the full factual predicate for their claims. Alston v. Parker, 363 F.3d 229, 233-34 & n.6 (3d Cir. 2004). Because this plaintiff is a pro se litigant, I will consider his allegations of fact and make inferences where it is necessary and appropriate.

DISCUSSION

Defendants argue that the complaint should be dismissed for several reasons. First, both defendants assert that they are immune from civil rights claims brought under 42 U.S.C. § 1983. Second, they argue that the complaint does not allege deliberate indifference. Third, they argue that plaintiff's claims should be dismissed for failure to exhaust the available administrative remedies because plaintiff did not file a grievance with respect to the injury he suffered at CCC Allentown. Finally, defendant Luquis argues that the claims against him must be dismissed because they are based on the legally impermissible theory of respondeat superior.

I.  The Claims Against Defendants in Their Official Capacity Will Be Dismissed

Defendants argue first that plaintiff's claims against them in their official capacity must be dismissed.[5] The Eleventh Amendment provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Simply stated, "state governments . . . are immune from suit in federal court under the Eleventh Amendment." Betts v. New Castle Youth Devel. Ctr., 621 F.3d 249, 253-54 (3d Cir. 2010).  "State sovereign immunity extends to subsidiary units and individual state employees sued in their official capacity." Druz v. Noto, 415 F. App'x 444, 446 (3d Cir. 2011).  "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989).  "As such, it is no different from a suit against the State itself." Id., citing Ky. v. Graham, 473 U.S. 159, 165-66 (1985).

"Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) Congressional abrogation, (2) waiver by the state and (3) suits against individual officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002), citing MCI Telecomm. Corp. v. Bell Atl.-Pa., 271 F.3d 491, 503 (3d Cir. 2001).  The Court of Appeals has held that none of these exceptions apply to prison officials acting in their official capacity.  See

---

[5] Plaintiff does not specify in his complaint whether he is suing defendants in their official or individual capacity.  Because the plaintiff is a pro se litigant, his complaint is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Therefore, I interpret his complaint as alleging claims against defendants in both capacities.

Walker v. Zenk, 323 F. App'x 144, 148 (3d Cir. 2009) (affirming the denial of plaintiff's motion to amend his complaint because claims against Bureau of Prison employees in their official capacity "would remain barred by sovereign immunity."); Durham v. Dept. of Corr., 173 F. App'x 154, 156 (3d Cir. 2006) (affirming District Court's dismissal of Department of Correction employees to the extent that they were sued in their official capacities).

First, Congress did not "abrogate the Commonwealth's Eleventh Amendment immunity" by passing section 1983. Cook v. Floyd, 398 F. App'x 702, 703 (3d Cir. 2010); accord Quern v. Jordan, 440 U.S. 332, 345 (1979) ("section 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States."). Second, the allegations in plaintiff's complaint "do not fall under any one of the nine listed categories for which immunity has been waived by the Commonwealth of Pennsylvania." Durham, 173 F. App'x at 157; see 42 Pa. Cons. Stat. Ann. § 8522(b).[6] Finally, the third exception does not apply because plaintiff does not seek prospective injunctive relief. See McCauley v. Univ. of the V.I., 618 F.3d 232, 240-41 (3d Cir. 2010) (holding that plaintiff "cannot seek money damages against [defendants in their official capacities]" and "may only seek prospective injunctive relief.").

---

[6] The nine exceptions to sovereign immunity set forth in section 1983 are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) national guard activities; (9) taxoids and vaccines. 42 Pa. Cons. Stat. Ann. § 8522(b).

In light of the foregoing, I will dismiss plaintiff's claims against Albo and Luquis in their official capacities.

II.     Plaintiff's Claims Against Defendants in their Individual Capacities

"Under Section 1983 every person who, acting under color of state law, 'subjects or causes to be subjected' another person to a deprivation of a federally secured right is liable for that transgression." Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir. 1989), quoting 42 U.S.C. § 1983.  A state actor may be liable under section 1983 in either of two ways.  See id., citing Monell v. N.Y. City Dept. of Soc. Servs., 436 U.S. 658, 691-92 (1978).

First, a state actor may be liable when he "subjects" an individual to a constitutional violation.  See id.  Where a prisoner alleges that a prison official has violated his Eighth Amendment rights, the prisoner must show that the prison official acted with deliberate indifference to a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 828 (1994). "Deliberate indifference can be shown when a prison official knows of and disregards an excessive risk to inmate health or safety."  Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997) (internal quotations omitted), citing Farmer, 511 U.S. at 837.  Under this standard, a prison official may not escape liability "by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault."  Farmer, 511 U.S. at 843.  On the other hand, however, "prison officials who act reasonably cannot be found liable under the [Eighth Amendment]."  Heefran v. Mellinger, 324 F. App'x 176, 179 (3d Cir. 2009) (internal quotations committed), citing Farmer, 511 U.S. at 835.

Second, a state actor may be liable "for someone else's constitutional tort, that is, for 'causing' the plaintiff to be subjected to the constitutional violation." Sample, 885 F.2d at 1113. To show that the defendant caused the alleged constitutional violation, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ . . . ." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). In Sample, the Court of Appeals adopted a four part test to determine when a supervisor's "policies or practices led to an Eighth Amendment violation." Id., citing Sample, 885 F.2d at 1118. Under Sample a plaintiff must show that: "(1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Id., citing Sample, 885 F.2d at 1118.

    A.  Plaintiff's Complaint Does Not State a Claim Against Luquis

Luquis asserts that plaintiff's complaint contains no allegations that Luquis had any personal involvement or knowledge of the events underlying the allegations. See Def.'s Br. at 9. I agree. Plaintiff's complaint contain no allegations that Luquis knew of and disregarded a substantial risk of serious harm to plaintiff or that Luquis adopted a policy or practice that violated plaintiff's Eighth Amendment rights. Indeed, the only reference to Luquis is in the caption. See Am. Compl. at 1. Therefore, I agree with Luquis that plaintiff has failed to allege sufficient facts to hold him liable.[7]

---

[7] In plaintiff's affidavit, he claims that Luquis is the director of CCC Allentown and "knows everything that takes place or goes on at the Allentown Community Corrections Center." He also claims that Luquis is "legally responsible for the overall health and welfare of the residents/imate (sic) there at [CCC Allentown]." Pl.'s Aff. at 7. Even if I were to consider the allegations in plaintiff's affidavit, I find that these allegations do not state a claim under section 1983 because "[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the

B.    Plaintiff's Complaint States a Claim Against Albo

Plaintiff alleges that Albo was deliberately indifferent to a risk of serious harm to plaintiff. He argues that Albo had actual knowledge of the risk plaintiff faced from the Bloods and disregarded that risk by not transferring plaintiff to another prison. Am. Compl. at 4.

Albo disagrees. He does not dispute that he had knowledge that plaintiff faced a substantial risk of serious harm from the Bloods. Instead, Albo argues that he cannot be held liable because he did not know that Davis in particular was a member of the Bloods or posed a risk to plaintiff. See Def.'s Br. at 11. The question before me is whether deliberate indifference can be predicated on knowledge of a general risk from a gang where the eventual assailant was an unknown member of that gang.

Courts have recognized that a prison official can violate an inmate's Eighth Amendment rights by failing to protect the inmate against a threat of physical violence even when the identity of the eventual assailant is not known in advance. See Farmer, 511 U.S. at 843; accord Brown v. Budz, 398 F.3d 904, 915 (7th Cir. 2005) ("deliberate indifference can be predicated upon knowledge of a victim's particular vulnerability, though the identity of the ultimate assailant [is] not known in advance of [the] attack . . . ."). This is especially true where an inmate is "a member of an identifiable group of prisoners for whom risk of assault [is] a serious problem." Langston v. Peters, 100 F.3d 1235, 1239 (7th Cir. 1996), quoting Walsh v. Mellas, 837 F.2d 789 (7th Cir. 1988). In Walsh, for example, the plaintiff inmate assisted in defending prison officials against a violent attack by incarcerated members of a street gang. Walsh, 837 F.2d at 792. The

---

operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).
    I will grant plaintiff leave to amend his complaint with respect to his claims against Luquis. He is advised, however, that if he chooses to do so he must allege facts demonstrating that Luquis was personally involved in the deprivation of his rights.

Court held that the plaintiff's actions placed him in a class of inmates "for whom the risk of assault was a serious problem of substantial dimensions." Id. at 797. He was released from prison shortly after the incident but reincarcerated several years later. Id. at 792. Over the plaintiff's objections, prison officials placed him in a cell with a member of the same street gang–although at trial the officials claimed that they were unaware of plaintiff's cellmate's gang affiliation. Id. Within hours, the plaintiff's new cellmate stabbed and strangled the plaintiff into unconsciousness. Id. The Court of Appeals held that under such circumstances plaintiff was entitled to bring suit under section 1983. Id.

Courts in this Circuit have reached similar conclusions with respect to inmates labeled as "snitches." See, e.g., Blizzard v. Quillen, 579 F. Supp. 1446, 1451 (D. Del. 1984) (holding that "a well-known generalized threat to an inmate could create a duty to protect" an inmate labeled a snitch.) In Hamilton, the Court of Appeals held that the defendant prison official acted with deliberate indifference where he kept the plaintiff in the general population despite knowing that he had been labeled a snitch and, as a result, had a long history of being assaulted in the Delaware prison system. 117 F.3d at 745. The Court did not require the plaintiff to provide evidence that the defendant had specific knowledge that the assailant posed a risk to the plaintiff. Id. at 746; see also Cuciak v. Bd. of Chosen Freeholders, No. 05-2658, 2005 WL 2217015 at *3-4 (D.N.J. Sep. 6, 2005) (finding that evidence that the defendant prison official knew that the plaintiff faced a general risk in his housing unit from gang members was sufficient to support a finding of deliberate indifference.)

If proven, the allegations contained in plaintiff's complaint demonstrate that Albo knew that plaintiff was especially vulnerable to assault by the Bloods. Albo also knew that requiring plaintiff to remain in the general population would expose plaintiff to the possibility of such

assault. In light of the fact that plaintiff in proceeding pro se, I find that plaintiff hasalleged sufficient facts, albeit barely, to survive the present motion to dismiss.

III.    Plaintiff Has Exhausted His Administrative Remedies

Defendants also argue that plaintiff has not exhausted his administrative remedies. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1197e(a). "Proper exhaustion of administrative remedies requires filing a timely or otherwise procedurally non-defective grievance." Daniels v. Rosenberger, 386 F. App'x 27, 29 (3d Cir. 2010), citing Woodford v. Ngo, 548 U.S. 81, 83-84 (2006) (defining proper exhaustion as "using all steps that the agency holds out, and doing so properly . . . ."). Failure to exhaust is an affirmative defense to be pled and proven by the defendant. See Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002) (recognizing that prison officials and their attorneys can "readily provide the court with clear, typed explanations . . . of relevant administrative regulations," while "[p]ro se prisoners will often lack even such rudimentary resources.")

"The PLRA does not require exhaustion of all remedies." Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002). "Rather, it requires exhaustion of such administrative remedies 'as are available.'" Id., quoting Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). An available remedy is on that is "capable of use; at hand." Id. at 113. Conversely, "[w]e have previously held that erroneous instructions or other impediments to pursuing administrative relief may render those remedies 'unavailable' for the purposes of section 1997e(a), and can potentially excuse a failure to comply therewith." Toney v. Bledsoe, No. 10-3471, 2011 WL 1828380, at *3 (3d Cir. May 13, 2011); accord Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy

that prison officials prevent a prisoner from 'utilizing' is not an 'available' remedy under section 1997(e)(a) . . . .").

I find <u>Brown</u> to be instructive on this point.  There, the plaintiff alleged that prison officials informed him that he was not allowed to file a grievance until after a pre-grievance investigation was completed and then "indefinitely delayed completion of the investigation." <u>Brown</u>, 312 F.3d at 110.  The defendants moved to dismiss on the basis that the plaintiff had not properly exhausted his administrative remedies.  They asserted that the plaintiff did not file an initial grievance as required under the prison's three-tier grievance policy.  <u>Id</u>.  The Court denied the defendant's motion and held that "the formal grievance proceeding . . . was never 'available' to [the plaintiff] within the meaning of 42 U.S.C. §1197e."  <u>Id.</u> at 112.

In the present case, defendants argue that because plaintiff never filed "any grievances in regard to the fighting incident at CCC Allentown," he failed to exhaust his administrative remedies.  <u>See</u> Def.'s Br. at 14.  I disagree.  In plaintiff's complaint he alleges that he asked for grievance forms every day, for thirty days, and was repeatedly denied by officials who told him that the prison had no more grievance forms left.  <u>See</u> Pl.'s Br. at 3.  If these allegations are true, a reasonable jury could conclude that the administrative remedies at the prison were not available to plaintiff.  <u>Miller</u>, 247 F.3d at 740 ("While we do not resolve at this time the question of whether [the plaintiff], in fact, complied with § 1997e(a), we conclude that the allegations in his motion to reinstate were sufficient to raise an inference that he had exhausted his 'available' remedies.").

CONCLUSION

The claims against defendants in their official capacities will be dismissed with prejudice. The claim against Jamie Luquis in his individual capacity will be dismissed with leave to amend. In all other respects, defendants' motions to dismiss will be denied.

An appropriate Order follows.